# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHANNON D. HAWTHORNE** </br> **Plaintiff,** </br> v. </br> **NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,** </br> **Defendant.** | **NO. CV 16-3180-KS** </br></br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Shannon D. Hawthorne ("Plaintiff") filed a Complaint on May 9, 2016, seeking review of the denial of her application for supplemental security income ("SSI"). On June 21, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On December 20, 2016, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 19.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative,

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

remanding for further proceedings. (Joint Stip. at 12.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 13.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On August 17, 2012, Plaintiff, who was born on December 31, 1980, filed an application for SSI.[2] (*See* Administrative Record ("AR") 107.) Plaintiff alleged disability commencing January 1, 2001 due to schizophrenia, lower back pain, panic attacks, auditory hallucinations, visual hallucinations, and illiteracy. (AR 124.) Plaintiff alleged no previous work experience. (*Id.*) After the Commissioner denied Plaintiff's applications initially (AR 55), Plaintiff requested a hearing (*see id.* 60). Administrative Law Judge Brenton Rogozen ("ALJ") held a hearing on June 25, 2014 (*id.* 32-44). Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Robin Scher. (*See* AR 38-44.) On September 30, 2014, the ALJ issued an unfavorable decision, denying Plaintiff's application for SSI. (*Id.* 11-17.) On March 15, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (AR 13.) The ALJ further found that Plaintiff had the following medically determinable impairments: a learning disorder, not otherwise specified; a mood disorder, not otherwise specified; and polysubstance abuse with physiological dependence, in reported remission. (*Id.*) However, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments. (*Id.*) Accordingly, the ALJ determined that

---

[2] Plaintiff was 31 years old on the application date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 416.963(c).

Plaintiff had not been under a disability, as defined in the Social Security Act, from the application date through the date of the ALJ's decision. (*Id*. at 16.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not

3

reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

The sole issue in dispute is whether the ALJ properly evaluated the evidence at step two of the sequential analysis when he determined that Plaintiff does not have a severe medically determinable impairment or combination of impairments. (Joint Stip. at 3.)

### I.   The Medical Evidence Of Plaintiff's Mental Impairments

#### A. Plaintiff's Prison Medical Records

Plaintiff was incarcerated in 2012 and released in June 2013. (AR 195.) On August 6, 2012, M. Kirklin, LCSW, a clinical social worker with the California Department of Corrections and Rehabilitation ("CDCR"), conducted an initial screening of Plaintiff and found indications that he has a possible mood disorder. (AR 163.) At that time, Plaintiff reported that he, *inter alia*: has a history of taking antidepressants; attempted suicide in 1996; believed, now or at some point in the past, that people were watching or spying on him; believed, now or at some point in the past, that people were following him; believed, now or at some point in the past, that he has been poisoned or plotted against by others; believed, now or at some point in the past, that someone could control his mind; and experienced auditory and/or visual hallucinations either now or at some point in the past. (AR 164.) He identified his past psychotropic medications as Haldol, an antipsychotic, and Lithium. (167.)

4

Plaintiff was then examined by CDCR psychiatrist, L. Kuberski, who diagnosed Plaintiff with "no diagnosis or condition" (*see* AR 170 (8/14/2012 – diagnosing Plaintiff with v71.09 on Axis I)) and assessed a GAF score of 75, indicating that Plaintiff had mild difficulty in social, occupation, or school functioning but was "generally functioning pretty well" (*id.*). *See also* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 34 (revised 4th ed. 2000). Dr. Kuberski observed that Plaintiff's fund of information, intellectual functioning, concentration, attention, memory, thought processes, insight, judgment, mood, speech, sleep, appetite, affect, and general coping skills were all within normal limits. (AR 168, 172.) Dr. Kuberski also noted that Plaintiff was not presently taking any psychiatric medications. (AR 172.) Based on the foregoing, Dr. Kuberski determined that Plaintiff did not meet the criteria for inclusion in the California Department of Corrections' Mental Health Services Delivery System. (AR 170.)

Plaintiff's CDCR medical records also show that he had two subsequent medical examinations during his incarceration for reasons unrelated to his mental health. Neither examining physician noted that Plaintiff reported or exhibited mental distress or possible psychiatric difficulties. (AR 177 (10/8/12 – Plaintiff complains of groin pain), 173 (3/11/13 – follow up visit).)

**B. Plaintiff's Post-Release Medical Records**

Approximately six months after his June 2013 release from prison (*see* AR 195), Plaintiff began receiving mental health treatment at the Compton Family Mental Health Center. (*See, e.g.*, AR 196.) During Plaintiff's initial assessment on December 9, 2013, Plaintiff reported visual and auditory hallucinations as well as paranoid delusions and suspicious ideations. (AR 218.) However, he was found to have: average grooming; normal eye contact; unimpaired speech, intellectual functioning, and memory; an average fund of knowledge; intact concentration and judgment; and adequate insight. (AR 218.)

At the initial medication evaluation by Olena Gorsky, M.D., a psychiatrist, Plaintiff reported he had been off his medications for two years – presumably throughout his incarceration – and had noticed a worsening of his symptoms. (AR 193.) He reported seeing shadows, hearing a male voice, and thinking that people were watching and laughing at him and may kill him. (AR 193.) However, contrary to his reports to the CDCR psychiatrist, Plaintiff reported no history of suicide attempts. (AR 193.) He identified his previous medications as including Haldol, Lithium, Zyprexa, and Trazodone. (AR 193.) He stated that he had been hospitalized during his last incarceration (AR 195), but there are no CDCR records to support this claim.

In the mental status examination, Dr. Gorsky observed that Plaintiff's abstract thinking was impaired but she identified no other limitations, describing his concentration as "intact," his thought process as "coherent and goal-directed," and his insight and judgment as "fair." (AR 195.) She also observed "some discrepancy between [Plaintiff's] described symptoms and his performance during interview and mental status exam." (AR 195.)

Dr. Gorsky diagnosed Plaintiff with a psychotic disorder and polysubstance dependence (AR 195) and prescribed Haldol, Cogentin, which is often prescribed to treat side effects of Haldol, and Trazodone, an antidepressant and sedative. (AR 196.) At an April 14, 2014 follow up visit, Dr. Gorsky increased Plaintiff's dosage of Trazodone. (AR 192.)

On August 14, 2014, Plaintiff was a walk-in for a medication refill. (AR 205.) Although Plaintiff reported being homeless,[3] he also reported improvements in his mood and sleep, denied auditory or visual hallucinations, exhibited fair grooming and hygiene, reported no ill side effects from his medications, exhibited a "logical and goal-directed"

---

[3] Dr. Gorsky referred Plaintiff to a case worker to help him find housing. (AR 207.) The record does not indicate whether Plaintiff followed up on the referral.

thought process without noticeable delusional thought content, and demonstrated "fair" insight and judgment. (AR 205, 207.)

The Compton Family Mental Health Center records also show that Plaintiff repeatedly missed his appointments with Dr. Gorsky, only coming in for walk-in appointments when his requests for medication refills were denied. (*See, e.g.*, AR 214 (6/9/14 – refill request authorized even though Plaintiff missed 6/4/14 appointment), AR 209 (7/16/14 – Plaintiff presented as a walk in because he had run out of medications), AR 208 (8/14/2014 – medication refill request denied because Plaintiff missed his 8/13/2014 appointment), AR 205 (8/14/2014 – Plaintiff was a walk-in for a medication refill), AR 204 (9/15/14 – medication refill request granted for 30 days), AR 203 (10/16/14 – medication refill request denied because Plaintiff missed his 10/9/14 appointment).) Additionally, Plaintiff was noncompliant with Dr. Gorsky's recommendation that he receive talk therapy. (*See* AR 196, 207, 209) (reminding Plaintiff to keep therapy appointments). Plaintiff participated in his first therapy session on February 14, 2014. (AR 224.) However, Plaintiff was a no-show for his therapy session on April 16, 2014 (AR 223) and rescheduled his May 5, 2014 appointment (AR 220). Center staff asked Plaintiff if he had any "barriers" to attending his appointments, such as transportation or memory concerns, and Plaintiff responded that he did not. (AR 220.) On July 2, 2014, Plaintiff was assigned a different therapist and committed, over the phone, to scheduling an appointment with him. (AR 213.) However, there are no other records of any therapy sessions after Plaintiff's initial session on February 14, 2014. On March 3, 2015, Plaintiff's therapist "deactivated" Plaintiff's case because Plaintiff "ha[d] been absent from treatment for an extended period of time for reasons unknown." (AR 202.)

\\
\\
\\
\\

7

### C. The Report Of The Examining Psychiatrist, Dr. Parikh

On August 26, 2013, approximately one year after the application date and shortly after Plaintiff's release from prison, Sohini P. Parikh, M.D., a board eligible psychiatrist, examined Plaintiff in connection with his SSI application. (AR 177176-183.) Dr. Parikh observed that "there are no records available for review on this claimant during this assessment." (AR 178.)

Plaintiff reported to Dr. Parikh that he had been a "slow learner" since kindergarten. (AR 177.) He reported attending special education classes in school and completing the 9th grade. (AR 178.) He reported feeling that "people are following him and watching him . . . that they are out to get him." (AR 177.) He reported that he thinks a camera is spying on him. (*Id.*) Contrary to the CDCR records and Plaintiff's reports to staff at the Compton Family Mental Health Center, Plaintiff reported that he was treated with psychiatric medications while in jail and in prison. (AR 178.) Oddly, Plaintiff also told Dr. Parikh that he had not taken psychiatric medication at any point in the last three years, *i.e.*, since some point in 2010 (AR 178), a statement that cannot be reconciled with either his statement to Dr. Parikh that he was treated with psychiatric medications while in prison in 2012 and 2013 (*id.*), or his February 10, 2014 statement to staff at the Compton Family Mental Health Center that he had only been off his medications for two years, *i.e.*, since some point in 2012 (AR 195). Plaintiff also denied any hospitalizations (AR 178), another statement at odds with his reports to staff at the Compton Family Mental Health Center (AR 195).

During Dr. Parikh's examination, Plaintiff was unable to explain the proverbs "When the cat is away, the mice will play," and "Don't cry over spilled milk." (AR 180.) Plaintiff did not know the capital of California or how many nickels are in a dollar. (AR 181.) Plaintiff could not perform serial seven subtractions from 100, serial three subtractions from 100, or double digit arithmetic or multiplications. (AR 181.) Plaintiff also used his fingers

to determine that 2 + 3 = 5 and 9 − 3 = 6. (AR 181.) Nevertheless, Plaintiff reported that he was able to manage funds, pay bills, cook, shop, and perform housekeeping chores. (AR 178-79.) Plaintiff also reported getting along with family members, having close friends, and having no difficulties with neighbors. (AR 179.)

Dr. Parikh found that Plaintiff exhibited average insight, "logical" thoughts, and no deficits in attention during the examination. (AR 179-81.) Plaintiff denied hearing voices or noises or having any visual hallucinations. (AR 180.) Dr. Parikh assessed a GAF score of 56-61, indicating moderate difficulty in social, occupational, or school functioning[4] (AR 182); *see also* DSM-IV, but ultimately opined that Plaintiff has no restrictions or difficulties: in his daily activities; ability to maintain social functioning; concentration, persistence, and pace; ability to understand, carryout, and remember both simple and complex instructions; respond to peers and the general public; respond appropriately to the usual situations; and deal with changes in a routine setting. (AR 182.) Dr. Parikh also advised Plaintiff "to refrain from using alcohol and marijuana" and "undergo psychological testing to determine his IQ and to evaluate his social skills." (AR 182.)

**D. The Report Of The Reviewing Psychologist, Dr. Morris**

The State Agency psychologist, Kim Morris, Psy.D., conducted a review of Plaintiff's medical records on September 13, 2013 and opined that Plaintiff is moderately limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and respond appropriately to changes in the work setting. (AR 50, 52-53.) Dr. Morris assessed no other limitations. (*See generally id.*) In making this assessment, Dr. Morris reviewed reports from the California

---

[4] The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2012).

Department of Corrections, which were received on September 9, 2013, after Dr. Parikh's examination, and Dr. Parikh's report. (AR 56.)

## II.     The ALJ's Review At Step Two Of The Sequential Analysis.

### A. Applicable Law

A medical diagnosis alone does not make an impairment qualify as "severe" for the purposes of step two of the sequential analysis. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Instead, the Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 416.921.

"An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is *clearly established* by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted). However, a medical problem which can be controlled by medication is not severe. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also Tagger v. Astrue*, 536 F. Supp.2d 1170, 1180 (C.D. Cal. 2008) (finding ALJ erred at Step Two because the plaintiff's medical records did not show that his mental impairments were effectively controlled by medication).

### B. ALJ's Determination

The ALJ determined that Plaintiff has several medically determinable impairments – a learning disorder, not otherwise specified; a mood disorder, not otherwise specified; and polysubstance abuse with physiological dependence, in reported remission – but no severe impairment or combination of impairments. (AR 13.) In reaching this conclusion, the ALJ found the following: Plaintiff's statements about his symptoms and functional limitations were not entirely credible (*see* AR 14-15); Plaintiff's mother's statements about Plaintiff's symptoms and functional limitations were not entirely credible (*see id.*); the opinion of the State Agency reviewing psychologist, Dr. Morris, was entitled to little weight (*id.* 16); and the opinion of the consulting psychiatrist, Dr. Parikh, was entitled to great weight (*id.* 15-16). Based on this evaluation of the evidence, the ALJ found that Plaintiff's impairments neither significantly limited, nor are expected to significantly limit, Plaintiff's ability to perform basic work activities for 12 consecutive months. (AR 13.)

With respect to Dr. Parikh's opinion, the ALJ wrote that it "wholly supports a finding that [Plaintiff's] medically determinable mental impairments are nonsevere and is entirely consistent with the limited number of mental health records available. For these reasons and based on her examining status, Dr. Parikh's opinion is afforded great weight." (AR 16.) In contrast, the ALJ assigned "little weight" to the opinion of the State Agency psychologist, Dr. Morris, "because evidence received at the hearing level supports a finding that [Plaintiff's] medically determinable mental impairments are nonsevere." (AR 16.) The ALJ

11

did not identify what evidence was received at the hearing level, *i.e.*, after Dr. Morris' review of the records, that necessitated a finding of nonsevere. (AR 16.)

**C. Discussion**

Plaintiff contends that the ALJ erred in the following ways: (1) he mischaracterized Dr. Parikh's opinion as being consistent with a finding of no severe impairment and erred in assigning great weight to Dr. Parikh's opinion; and (2) his conclusion that Plaintiff does not have a severe impairment is not supported by substantial evidence in the record. (*See* Joint Stip. at 5-8.) The Court agrees with Plaintiff that the ALJ erred in his evaluation of Dr. Parikh's opinion but finds that the error is harmless in light of the overall record.

1. The ALJ Erred In Evaluating Dr. Parikh's Opinion

Agency regulations require the Commissioner to provide any consulting physician "necessary background information" about the plaintiff's condition. *See* 20 C.F.R. § 416.917; *see also Nalley v. Apfel*, 100 F.Supp.2d 947, 953 (S.D. Iowa 2000) ("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"). Here, Dr. Parikh reported that she had no background information about Plaintiff's condition. (AR 178.) Without Plaintiff's CDCR records, Dr. Parikh based her assessment of Plaintiff on an incomplete, snapshot picture of Plaintiff's condition, which precludes her opinion from either constituting substantial evidence for the ALJ's determination at Step Two or being entitled to greater weight than the opinions of doctors with a more complete longitudinal picture of Plaintiff's mental health. *See Dunston v. Comm'r of. Soc. Sec.*, No. 2:12-CV-0650-KJN, 2013 WL 2664701, at *6 (E.D. Cal. June 12, 2013) ("An opinion on a documented medical problem given after only a one-shot examination, without recourse to the plaintiff's available medical records, is not one which can generally be relied upon."); *Guevara v. Colvin*, No. EDCV 11-01257-MAN,

2013 WL 1319752, at *8 (C.D. Cal. Mar. 29, 2013); *Pruitt v. Astrue*, No. EDCV 08-1107-MAN, 2010 WL 1330164, at *5 (C.D. Cal. Mar. 31, 2010) ("because [the examining psychologist] assessed [the] plaintiff's residual functional capacity without a complete review of [the] plaintiff's medical records, the Court cannot conclude that Dr. Taylor's opinion constitutes substantial evidence). Accordingly, the ALJ erred in assigning great weight to Dr. Parikh's incomplete assessment of Plaintiff's functional limitations.

### 2. The ALJ's Error Is Harmless

However, the ALJ's error at Step Two is harmless, because even if Dr. Parikh had access to Plaintiff's CDCR records, those records did not suggest that Plaintiff was more than minimally limited in his ability to perform any basic work activity. To the contrary, Plaintiff's CDCR records establish that Plaintiff's claim of a disabling mental impairment was so groundless that he was not eligible for inclusion in the California Department of Corrections' Mental Health Services Delivery System (AR 170) and did not report or exhibit any mental distress or possible psychiatric difficulties warranting medical treatment throughout his incarceration (*see, e.g.*, AR 177 (10/8/12 – Plaintiff complains of groin pain), 173 (3/11/13 – follow up visit)). Accordingly, if Dr. Parikh had reviewed Plaintiff's medical records for the period between Plaintiff's application date and Dr. Parikh's examination, those records would not have suggested that Plaintiff had more significant functional limitations than the limitations Dr. Parikh assessed.

Furthermore, the ALJ's Step Two determination is supported by substantial evidence in the record. As a preliminary matter, Plaintiff's inconsistent statements to the CDCR, the Compton Family Mental Health Center, and Dr. Parikh render him an unreliable historian and his subjective complaints to his treating and examining doctors, as well as to the ALJ, less than fully credible. Indeed, although Dr. Gorsky did not make a finding of malingering,

she stated that there were "discrepanc[ies]" between Plaintiff's subjective complaints and his performance. (AR 195.)

Additionally, Dr. Gorsky, Plaintiff's most recent treating psychiatrist, assessed no functional limitations except to state that Plaintiff's ability to perform "abstract thinking was impaired" to an unspecified degree. (*See generally* AR 195.) However, abstract thinking is not a basic work activity, because, like the ability to understand, remember, and carry out detailed instructions, it is not an ability or aptitude that is necessary to perform *most* jobs. *See* 20 C.F.R. § 416.921 (defining a "basic work activity" as an ability or aptitude "necessary to do *most* jobs" and citing, as an example, the ability to understand, remember, and carry out *simple* instructions) (emphasis added); *see also* POMS DI 25020.010(B)(2) (listing the basic mental aptitudes and abilities needed for any competitive, remunerative job and omitting from that list any reference to abstract thinking, planning, or the ability to draw inferences); POMS DI 25020.010(B)(3) (listing the mental abilities and aptitudes required for unskilled work and omitting from that list any reference to abstract thinking, planning, or the ability to draw inferences). Dr. Gorsky's finding that Plaintiff's mental impairments do not limit Plaintiff's ability to do basic work activities supports the ALJ's finding that Plaintiff's mental impairments are nonsevere. *See Webb*, 433 F.3d at 687; 20 C.F.R. § 416.921.

Dr. Gorsky's finding is also entitled to controlling weight because Dr. Gorsky, unlike any other medical source in the record, saw Plaintiff on more than one occasion and her opinion is consistent with the other medical evidence in the record, including the reports of the two examining physicians. *See* 20 C.F.R. § 416.927(c)(2); (*see also* AR 168, 170, 172 (Dr. Kuberski identified no limitations in Plaintiff's intellectual functioning, concentration, attention, memory, thought processes, insight, judgment, and general coping skills and found that Plaintiff did not meet the criteria for inclusion in the California Department of Corrections' Mental Health Services Delivery System); *id.* 182 (Dr. Parikh similarly

identified no functional limitations); *id.* 178-79 (Plaintiff reported to Dr. Parikh that he had no difficulty managing funds, paying bills, cooking, shopping, and housekeeping).)

Lastly, the record clearly establishes that Plaintiff's mental impairments are effectively controlled with medication. *See Warre*, 439 F.3d at 1006 ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Once Dr. Gorsky adjusted Plaintiff's dosage of Trazodone in April 2014, Plaintiff reported that his mental impairments were effectively controlled with medication, and these reports were consistent with Dr. Gorsky's observations. (AR 205, 207) (August 2014 – Plaintiff reported improvement, exhibited a "logical and goal-directed" thought process without noticeable delusional thought content, denied auditory and visual hallucinations, and demonstrated "fair" insight and judgment). In addition, so long as Plaintiff received his medications, he declined additional recommended treatment, including talk therapy and regular follow-up visits with Dr. Gorsky, despite reporting no barriers to his ability to access this treatment (AR 220). (*See generally* AR 202, 213, 220, 223.) Plaintiff's decision not to pursue additional recommended treatment, despite the absence of any obstacles to doing so, indicates that he felt his mental impairments were being effectively managed and that his intermittent subjective complaints of ongoing and disabling symptoms were not credible. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (ALJ may consider "failure to seek treatment or follow a prescribed course of treatment" in assessing a plaintiff's credibility).

Accordingly, the ALJ's error in assigning Dr. Parikh's opinion great weight is harmless given:  the nature and findings of the medical records to which Dr. Parikh was denied access; and the medical evidence, which shows that Plaintiff's mental impairments are effectively controlled with medication and do not limit his ability to perform basic work activities.  For these reasons, the ALJ's decision that Plaintiff does not have a severe impairment or combination of impairments must be affirmed.

In reaching this conclusion, the Court notes that the record is devoid of medical or educational records regarding Plaintiff's learning disorder and its effect on his ability to perform basic work activities. However, the burden of proof at Step Two rests on the plaintiff, not the Commissioner, and thus Plaintiff, who has been represented by counsel throughout these proceedings, is responsible for the deficient development of the record on this issue. *See Valentine v. Comm'r of Soc. Sec.*, 575 F.3d 685, 689 (9th Cir. 2009) (claimant bears the burden of proof at steps one through four); *see also Brown-Hunter*, 806 F.3d at 495 ("[T]ouchstone for an award of benefits is the existence of a disability.").

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 16, 2017

　　　　　　　　　　　　　　　　　　　_/s/ Karen L. Stevenson_
　　　　　　　　　　　　　　　　　　　KAREN L. STEVENSON
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE